et al. We have Mr. Funk here, is that correct? Do you want to speak, counsel? Thank you, Your Honor. May it please the Court, Mr. Horner, Mr. Sprague, As this Court is no doubt aware, this case involves an election matter, one which involves Section 7-61 of the Election Code. Essentially what happened in this case was that no candidate for the Office of Board of Review of St. Clair County was nominated at the general primary for the Republican party. As such, a vacancy occurred that needed to be filled pursuant to Section 7-61. The candidate appointed to fill that vacancy was the petitioner candidate, and she did that by circulating nominating petitions and then filing those nominating petitions with the additional documents required under 7-61. It's important to note that there are no contested facts in this case. Essentially, the only issues presented are two questions of law presented in the petitioner's initial brief, which is first, whether Section 7-61 as amended on January 1, 2010, required the committee who appointed her to file a resolution with the county clerk in order for the petitioner to then circulate nominating petitions and file her nominating petitions. Do you agree if a resolution was required that it was filed too late? Absolutely. And if a resolution is not required under the public act, why did they file a resolution? Well, I believe the testimony was under a different section, I believe 8-17, which talked about different requirements. The central committee chairman said that he filed under the belief that he had to meet those filing requirements. Essentially, he was not sure what he was doing. And, in fact, that section applies to the General Assembly and has nothing to do with the Board of Review. But while it was unclear at the Electoral Board exactly why he did it, he did state that he didn't know. And I believe he got some advice from his party and followed that and then filed a resolution. I think it was an abundance of caution. Right. Essentially, as you can see from the two state board elections cases that we cited in our initial brief, there has been confusion about this statute throughout the state. And I know of another case in Madison County where two resolutions were filed. And, essentially, it is protection to see this is the first election cycle under which 7-61 was amended. So we're going to do both and hope it works. Now, with regard to the central committee, it's obvious they were confused because they filed a resolution, but they didn't follow it within the timeframe. So, obviously, they were following the 8-17, which they thought the filing date was April 5th, and that's what they filed by. In fact, I believe under the objector's view of the statute, 7-61, that the central committee would have been required to file on March 29th. So it was about a week after that. There are different requirements to fill a vacancy depending upon how the vacancy occurred? Correct. And jumping ahead to 7-61, what happened in 7-61, if you go back and look at each time it was amended, it originally, in 1977, paragraph 3, which deals with the resolution, essentially took form. And that paragraph, if you look at it, says nothing about primaries. And, in fact, the primary provision was not added until 1980. That paragraph says, or addresses the situation of when a candidate is nominated at a primary, but then either dies or declines the nomination or is unable to run for some other reason. So there's two situations under that paragraph as well. And I will address this, but that gets into this Court's decision in Osborne. But that paragraph is divided into vacancies that occur before the candidate is certified and vacancies that occur after the candidate is certified. In 1980, the legislature added the primary provision, and this applied to general primaries and consolidated primaries, essentially adding the ability for an established political party to nominate a candidate when no one was nominated at the consolidated or general primary. And at that time, instead of laying out specifically how to do that, they put at the end of that paragraph, in accordance with the requirements of this section. Well, there were no other requirements in the section at that time other than paragraph 3, which was in the statute prior to this paragraph being added in 1980. So it was obvious that the candidate had to follow the procedures in paragraph 3. And that led to some confusion, and that's what led us to Osborne and this Court's decision in Osborne. Essentially, in Osborne, the issue was not – and this is a case that the Circuit Court relied on and the Objector relied on and the Electoral Court relied on. The problem with Osborne is it was decided in 2002. The statute was amended in 2010. But what the issue in Osborne was was not if you filed a resolution. It was when do you file a resolution. And the confusion popped up there because, as I said, within paragraph 3, there's two different timelines. There's an eight-day rule and a three-day rule. And those are distinguished by whether the vacancy occurred before the candidate was certified or after the candidate was certified. And this Court correctly found that the eight-day rule specifically applied to – I believe it was post-certification vacancies. And because of that, they said the only thing left in the paragraph and the only thing left in requirements of the section was the three-day rule. And so this Court said if you didn't file within three days, that is the only thing that could apply, then you didn't meet your timeline. So that leads us to 2009 when the legislature, pursuant to Public Act 96-809, amended 7-61 again. And in doing so, the legislative history states what their intent was. And basically – and this is logical – they said, now wait a second. You, a candidate, can wait until after the primary and just get on the ballot by asking your committee of your established political party to put you on the ballot with only two, three signatures. Meanwhile, the opposing candidate has to go through all the rigors of running in the primary election. They have to circulate nominating petitions, they have to go out and do the footwork, and they have to do everything that the candidate is normally expected to do. And so we want to level the playing field. And I believe the term they used was equal footing. And so what we're going to do is make you do exactly what your counterpart is doing. You're going to have to go out and circulate nominating petitions. You're going to have to file all those documents. And so the legislature amended 7-61 by first removing the only language that tied paragraph 3 to the general primary provision in paragraph 9. That is, in accordance with the requirements of this section. As you remember, Your Honor, the primary provision was added after the paragraph 3 was in the statute. It wasn't contemplated in anything about primaries. This doesn't say anything about primaries. And it still doesn't say anything about primaries, consolidated or general. And that's why the legislature had to tack on that language in accordance with the requirements of this section. The appellee contends that the legislative debate regarding that public act supports the requirement that the committee still needs to file a resolution. That's incorrect. What's incorrect? That they contended or that you have to file a resolution? Both. The contention is that the sponsor of the bill said, well, this is only going to change the fact that you're going to have to file a nominating petition. There's nothing else that's going to change. And then I believe the appellee followed that up by saying, well, the slating is still going to be done by the established political party. Well, that's exactly correct. And that's exactly reflected in the amendment. The committee of the established political party still determines who they want to fill that. But they do that by providing that candidate with a notice of appointment that that candidate then has to file with their nominating petitions. So that's what that means. Now, if you read it in a vacuum and pick one sentence out of the legislative debates where the sponsor of the bill is not going through step by step what they're doing, then sure, I imagine you could arrive at that conclusion. But it's reflected in the amendment. And that is the established political party still picks who they want to fill the vacancy. And it's an appointee. And that appointee does not fill the vacancy until they fill their requirements under 7-61. Going back to the amendment of 7-61, when the primary provision was originally placed in the 7-61, the legislature could have spelled out exactly how they wanted the primary vacancies to be filled. And I think by failing to do so, they've created Osborne and they've created this case. What they should have done was clearly spell out how it was to be done, especially in light of how confusing Paragraph 3 is instead of just saying we're going to do it in accordance with the requirements of Paragraph 3 or with this section. But on the other hand, I understand why they did it because it probably would have been redundant to put in what was already in the statute. But I think it would have clarified and probably saved the candidate in Osborne. But the other issue that I'd like to note about 7-61 is that the language that the objector says applies in and of itself disqualifies itself from applying. It says the resolution filling the vacancy. That must be followed in three days, the resolution filling the vacancy. What we know is undisputed that you can't fill a vacancy by filing a resolution. If what the objector says is true and a resolution does need to be filed, it only allows the petitioner to go out and do what he or she has to do in order to meet the requirements of 7-61. Now, the other problem with the objector's and the electoral court's interpretation of this statute is it's going to lead to absurd results and in and of itself violates the provisions of the election code. First, you're going to have duplicate filings. Paragraph 3 and the paragraphs that apply to it, I believe it's 3-8, state that a statement of candidacy and statement of economic interest must be filed with the resolution by the committee of the established political party. Then, if we go to paragraph 9, as amended January 1, 2010, you'll see that these documents are then again filed by the candidate. So, you're violating the terms of the election code that says you can't have duplicate filings. And we believe the legislature understood this. The objector, I don't know what they believe. If they believe that the legislature just overlooked this. Not only are you going to have duplicate filings, but you're going to have a problem where what if one of those documents is, let's say, the first document filed by the committee. A statement of candidacy is defective. And they notice that within the time while their appointee is circulating nominating conditions. They correct that mistake and then file, the candidate then files a corrective statement of candidacy. Well, what happens? Which one's good? We're going to lead to litigation in this statute and it's going to lead to absurd results. And there's not going to be any way to determine this without litigation. In addition, you're going to have the filing of meaningless documents. You're going to have the committee filing a resolution that has no effect. It has no effect. All it does is allows the candidate to go out and do what she or he or she has to do under the amended paragraph 9. But there's no reason to file that document when the candidate is already filing evidence of it through her notice of appointment. And at the electoral board hearing if there's... Does that provide, the resolution provide proof that that's the candidate that the party selected, so that there is verification that the person who's seeking these petitions and running is the designated person? Well, it could be. But it would be duplicative and superfluous because the candidate provides that information already with a notice of appointment. In addition to the documents that a candidate would file before the general primary election, the candidate files a notice of appointment that's provided to he or she by the committee, which says that they've been appointed and they have the right to fill this vacancy. So that's already done and been contemplated by the legislature. And if it were filed by the committee, well, then you'd have the clerks taking worthless documents and being inundated by documents that mean nothing. What if two people were out circulating nominating petitions? Well, then they could easily falsify a resolution and file that themselves. I mean, if they're going to do that, if they don't have that notice of appointment, two people go out circulating nominating petitions, we can't prevent that right now. But when one candidate comes with a certified notice of appointment from the committee and one candidate doesn't, then we find out quickly who is the appointee of the committee and who's not. And so from the clear language of the statute and the amendment, we can see that Paragraph 3 does not apply to Paragraph 9 without some expressed language. And that expressed language was in the statute prior to January 1, 2010, and it was specifically taken out in the amendments of Public Act 96-809. Those two paragraphs are not connected any longer. In addition to 7-61, Petitioner in the alternative argues that even if the objector and the electoral board were correct and a resolution was required to be filed, the objector did not file their objection in a timely manner. The last day for filing the resolution, according to the objector, was March 29. Five business days thereafter was April 5. The last day for filing nomination papers for the petitioner, which are not at question here, they're not at issue. What she filed is not at issue. The last day for filing those was April 19. Five business days thereafter, and the last day for objecting to nominating petitions, nomination papers, that was not done in this case, is April 26. And therefore, if the objector wanted to object to the nominating petitions, or to the resolution, they needed to file by April 5. They filed on April 26, the date for filing objections with regard to nominating petitions. And what the objector states, or argues in their response, is that 7-61 adopts the rules of 10-8, which says five business days, you file objections within five business days of the last day for filing nomination papers and certificates of nomination. And that you follow the last day, five days from the last day of filing nomination papers. And that's how you determine when an objection needs to be filed under 7-61. The objector doesn't realize that this is impossible. This is impossible. Before January 1, 2010, there was nothing about nomination papers in the statute. Nobody filed nomination papers. So under the objector's argument, you couldn't have filed an objection to a resolution under 7-61, higher than January 1, 2010, because there was no time to start counting the five business days set forth in 10-8. And that can't be. But what has happened here with regard to 10-8, and the objector misunderstands why 7-61 adopts 10-8. 7-61 adopts 10-8 because resolutions are not provided for in 10-8. And they're not provided for in Article 10, which describes nomination papers. Resolutions aren't included. So the legislature had to adopt those rules so that they could be applied. Thank you. Thank you, Counsel. Good morning. May it please the Court. I'm Gary Korner. I represent the respondent appellee along with Robert Stray. And I report to Mr. Funk, his counsel. I wanted to address the threshold matter at the beginning of my argument. It's pursuant to this Court's order of July 8, 2010. In particular, the Court is taking up this appending motion to strike with the argument this morning. And it bears on the fact that counsel indicated that there's no contested facts in this case. Actually, there's no facts in this case. There's no facts to review because there's no record. Motions to strike involve, first, the supporting record that was filed by counsel. Illinois Supreme Court Rule 328 provides that when an appellant seeks relief from the reviewing court before the record on appeal is filed, the appellant may file with the appellant court a supporting record containing portions of, quote, the trial record. And Illinois Supreme Court Rule 311 that applies to expedited appeals provides that, quote, if warranted by the circumstances, the court may enter an order accepting a supporting record prepared pursuant to Rule 328. Procedurally, this Court should strike the supporting records because the record on appeal has already been filed by the appellant court. So there's no need to have a supporting record. Subsequently, this Court should strike the supporting record that contains reported proceedings because the St. Clair County Electoral Board reported proceedings was not a matter of record in the circuit court. Other reported exhibits that were not matters of record are also included in the supporting record. They were neither introduced by the petitioner or appellant, nor were they admitted by the circuit court. And the record of the proceeding before the circuit court indicates that, that nothing was offered by the petitioner or appellant and nothing was admitted by the circuit court. Therefore, it's not part of the, quote, trial court record within the meaning of Supreme Court Rule 328. So counsel's affidavit to the contrary is inaccurate. The record on appeal is to be created by the clerk of the trial court and certified by the clerk of the trial court under Rule 324. Is that the motion that we, or the supporting record that we just received? We just got reply briefs this morning, as you know. But didn't the clerk file something from the Electoral Board? No, that was a supporting record that was submitted. A copy of the supporting record was apparently submitted to the circuit court at the time of the filing of the notice of appeal. If you look at the volume... That wasn't for the trial court at the time of the decision? Correct, it was not. If you look at the volume of exhibits that was provided as part of the record, the circuit court, I'm sorry, the circuit clerk, it bears no file stamp. And so at that time, it was indicated that it was not part of the record. Apparently, counsel did file it, but it was filed with the notice of appeal as a supporting record. The supporting record in the 328 is supposed to be filed with the appellate court, obviously, not the circuit court. And it's not intended to supplement or augment the record on appeal. The record on appeal is limited to the record that was before the court. And again, the proceedings of the Electoral Court were not introduced by counsel for the petitioner appellate before the circuit court. Under Rule 329, this court is permitted to correct any material omissions or inaccuracies or improper authentication of the record. And that's the motion to strike that was filed last week with respect to that volume of exhibits. And pursuant to Rule 329, because that volume of exhibits does not bear a file stamp from the circuit clerk, even if it was filed with a notice of appeal, it was improperly filed because it should have been filed with this court. And secondly, it improperly contains items that were not a matter of record when the circuit court rendered its decision. So the fact remains that the only matters that were properly filed with the circuit court are contained in the common law record, Volume 1, and the report of proceedings, which is labeled R1 through R43, which is the proceedings before the circuit court. So with respect to the motion to strike, the respondent appellee requests that this court strike the volume of exhibits pursuant to Rule 329 for the reason set forth. Which contains the holding of the board? It contains the record of the transcript for the board. And the holding of it? Pardon me? And the formal decision of the board? The formal decision of the board is in the common law record, but it's not a complete decision of the board because under the Lockhart case that's cited in the brief, the findings of the court, I'm sorry, the findings of the Electoral Court can be contained in the record. They refer to it as the complete record of the Electoral Court decision is contained in the inclusive transcript along with the written decision. But again, neither the circuit court nor the circuit... Why wouldn't just the decision be sufficient in this case? Because the findings of fact can also be contained in the, under Lockhart, in the decision, I'm sorry, in the transcript of the Electoral Court decision. In this case, there were references made... Are there any findings of fact that are... Well, there were facts... That weren't disputed at all? Yes, there were facts that were disputed based upon the testimony that was provided by, that was referenced by counsel in his argument. But again, those are not matters of record before this court. Well, give me an example of what was the dispute of facts. Disputed as to why they filed their... One of the dispute of facts was raised by Justice Flexman about why they filed the resolution if it was not required. That would be a legal conclusion, would it not? Pardon me? Wouldn't that be a legal matter? But in order... While you review the questions of log and LOBO, you need to have facts that are... To which that law is applied, and you have no facts in this case. Now, addressing the... The provisions of 7-61... Well, let me back up. Based upon the arguments that are contained in the motion of strike... The first reason that this court should affirm the circuit court's decision is because this court does not have a record of the electoral board decision on which to base its decision. It's well settled under Illinois law that an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error. In the absence of that record of appeal, it will be presumed that the orders entered by the trial court was in conformity with the law and have a sufficient factual basis. And that's the Illinois Supreme Court's guidance, which was obviously adopted numerous times by this court. And I set forth the case of Farm Credit Bank of St. Louis v. Schwarm, where this court likewise adopted that standard. You have to resolve a record... Or an absence of a record or any missing portions of a record against the appellant. In this case, this is a judicial review. This is not administrative review law. This is judicial review under the Section 10-10.1 of the Election Code. And the law is clear that such review is limited to and must not exceed the electoral board's record, which you do not have. The reviewing court cannot consider matters outside of the electoral board's record, including facts that are proper on appeal, which is what's being attempted here. Section 10-10.1 says that parties may, if they're not required to, may file an answer. And that includes the electoral board within 10 days. In this case, the electoral board did not file an answer. The petitioner, the appellant, did not provide the record for which he wanted a review in this case. And based upon that, it is the appellant under 10-10.1, not the electoral board's responsibility to provide a record for the circuit court to review. But just addressing some of the arguments, even in the absence of a record, on the law. Again, the standard of review here is manifestly in the evidence as it applies to facts, de novo, as it applies to the law. Your colleagues in the First District have said that while the court reviews the statute de novo, the electoral board's interpretation of the Illinois Election Code is entitled to some deference, as it is the entity that is charged with interpreting the Election Code. Can we give any weight to the two decisions cited by the appellant there in the state board of election case? Well, those aren't state board of election decisions. Those are recommended decisions by a hearing officer for the state board of elections. Whatever they are, can we give any weight to it at all? No, they're not binding. I know they're not binding, but I mean, should we give them any deference at all? No, I wouldn't give them deference, because they're not decisions of the electoral board. They're decisions of a hearing officer, and there's no evidence that's produced by the petitioner appellant that the electoral board had had a decision. You would agree that they address the exact same issue that you're attempting to do, or that's addressed here in this case? They address 7F61. And they come down to the opposite conclusion as the local electoral board does here in this case? A single hearing officer did, subject to review. Two hearing officers, right? Wasn't it two cases per side? Yes, neither of which has been adopted by their electoral board, so they're not even electoral board decisions in the state board of elections. But getting to the, based upon that standard of review and providing deference to the electoral board in this decision, in this situation, getting to the interpretation of 7-61, statutory construction says, first, obviously, look at the plain language. And the plain language in this case requires a vacancy. That requirement, or requires a resolution to fill a vacancy in all respects under 7-61. That's what this court said in 4K Osborne in 2002. The same argument, or the similar argument was made that, well, that only applies to certain types of vacancies. In that particular case, they said the argument was it only applies to vacancies that are created before certification, not after certification. And this court said, no, the resolution requirement applies to all vacancies. And the same holds true here. Counsel has suggested that the amendment of 7-61 that took effect January 1st, 2010, somehow did away with the resolution requirement. And what they cling to is the reference to the words, in accordance with this section. And if you look at the paragraph to which they refer, it still contains the words, which may be filled in accordance with the requirements of this section. So they're saying the same thing that was said in the 4K Osborne case, is that the requirements of this section include paragraph 3. And if you look at paragraph 3, it says you need to file a resolution. What's the purpose of the notice of appointment? The purpose of the notice of appointment to be filed is distinct from the resolution. The notice of appointment is the selection that's made by the county committee. And the resolution is what? What's the difference between them? And I think that Justice Wexton, and this was something that was addressed at the electoral board, but Justice Wexton's question hit it right on the head, that it provides notice of who is the one that's selected, and it also creates the time to start circulation of the petition. Let us agree that this is not a model of clarity from the legislature. Correct. But the language that I'm looking at, that you contend is still there, says the resolution filling the vacancy shall be sent within three days of the action by which the vacancy was filled. That's still in the statute, right? Correct. And it remains, and it applies, just like the 4K Osborne decision suggests, it applies to all vacancies. Explain why you need a notice of appointment and a resolution. Why you would need it? Why? Why the legislature requires it. Well, the notice of appointment is something that is provided to the individual who is appointed, and then they circulate their petitions and file the petition. So that ten people couldn't do it, right? Well, see, here's the distinction. They drew a distinction in their language between a notice of appointment and a resolution because one is filed at the beginning of the process as the initial requirement. The second is filed at the end of the process after you've gathered your petition signatures and you're filing to complete your legislation. Well, they just want one person filling the vacancy chosen by the political party. Precisely, and that's why you have to file a resolution at the time that, or within three days, that vacancy is filled. They couldn't have a different person named in the resolution as opposed to the notice of appointment, though, could they? They couldn't have a different – no, they would appoint a single person, but if you don't file it at the beginning of the process, you're not providing any notice to the public of who is the person who's properly circulating the petitions. What's the purpose of the resolution then? It seems like these are the same things, aren't they? A notice of appointment is going to name the same person, presumably, as the resolution. Well, presumably, but it has to be filed at the beginning of the process so you have a proper person who's circulating the petitions. And it clarifies on the record in the circuit court who is the party selection so that nine people out there are not circulating petitions and confusing the public. It makes it a matter of record. It's a requirement that the notice of appointment be filed. But it's filed at the end of the process after the petition signatures are collected. The resolution is filed at the beginning of the process, thereby providing the notice that is contemplated for the public as to who is the proper party circulating the petitions. And based upon the 4K to Osborne decision and the fact that that requirement still exists and it's still part of the section that these primary vacancies are supposed to be filled in accordance with, under 4K to Osborne, this court said that if you don't file it within three days, that's a mandatory requirement. You must be removed from the ballot. But because this statute isn't necessarily as clear as you would like it to be, then if you go to extrinsic evidence, if this court feels that the language is ambiguous in any respect, if you look at the extrinsic evidence that is actually in the record, it's the fact that they filed it. They filed this resolution, albeit late. They filed it within seven days of the time that the appointment was made and before they ever filed any of the nomination petitions that contained the signatures. So therein lies their argument. It supports the position of the respondent appellee in this case. And again, if you go to the extrinsic evidence that they cite, that petitioner appellate cites, the debate in the legislature over House Bill 723 actually supports the reading of the respondent appellee in the electoral board in this case. Explain to me how the resolution fills the vacancy. How does the resolution fill the vacancy? Yes. In this factual scenario we have right here, how does the resolution fill the vacancy? Well, the resolution, as the initial requirement, coupled with the signature sheets, that fills the vacancy. The resolution doesn't fill the vacancy. Not on its own, but if you look, Your Honor, if you look at the statements that are made by Representative Fortner, State Representative Fortner, who sponsored this bill, he said in there, and I quote, The only change this bill would make is to say that if they wish to so fill it, that person still must get signatures, just like the party would have had to qualify the candidate before the primary. What he's saying is, you do everything you did before, and you go get the signatures. And that's why they maintain it in accordance with this section. That language remains in the act the way it's listed today. The second statement that's made by State Representative Fortner is, the way this bill will do it, if the party chairs would pick their choice, then they would have to proceed to get signatures. And that's exactly what happened in this case. The county committee made a selection, filed a resolution, then proceeded to get their signatures, and then filed the signatures. But they filed a resolution seven days after the appointment, which is late under the provisions of this section. And under the forepaid outflow decision, that it's mandatory that the candidate be removed from the ballot. What's your response that if a resolution is filed, is required to be filed, that your objection was too late? Again, as indicated in Representative Fortner's comments, and also in the statute, that all this is is an additional, it provides additional requirements. And the statute, section 7-6-1, expressly provides that, quote, the provisions of section 10-8 through 10-1, relating to objections to certificates of dominating papers, hearings, and objections in judicial review, shall apply to and govern objections to resolutions for filling a vacancy in nomination. That has existed before this amendment to 7-6-1. That adopts the procedure. And the nomination papers under the new section, 7-6-1, are not completed until the signatures are filed. So you have the resolution, and then you have the circulation period, and then you have the filing. And 75 days from the primary was April 19th. Five business days after that, under section 10-8, is the period within which to file the objection to those nomination papers. Under the new 7-6-1, if you file an objection to the resolution, it would be premature. Because you have to let them complete their nomination papers. It references nomination papers. For those reasons, I would ask that this court affirm the decision of the St. Clair County Electoral Board and the decision of the St. Clair County Circuit Court. Thank you. Any rebuttal? No. Mr. Horner. Very quickly, I'd like to hit on 10-8, what Mr. Horner just said. He's correct. 7-61 adopts the procedure in 10-8. That's not what they're saying in their brief, though. They're saying that it adopts the procedure as it's applied to nomination papers. So it's not just adopting the five-day rule. It's adopting the five-day rule and the date as it's applied to nomination papers. These aren't nomination papers. Resolutions are not nomination papers. They're not listed in Article 10. And that, because they're not nomination papers, is exactly why in 7-61 the legislature specifically adopted that process. They needed to give a process for allowing an objector to object to resolutions. So it's not that it adopts some specific date. It's that it adopts the rule, the five-day rule. Moving on to the – I'd just like to point out, I addressed the notice issue in Section 3, subsection B of our initial brief. The resolution under the current statute is not a notice provision. It's a resolution filling the vacancy. It didn't – that language is clear. It doesn't say it provides notice. And the legislature knew that it was a resolution filling the vacancy, not a resolution providing notice. Now I'd like to just address the arguments with regard to the record. I didn't address these off the bat because I really hoped that the objector wouldn't persist. In this case, what happened was the candidate complied with Section 10-10.1 to secure judicial review of this decision. That's all they needed to do, and they did that. They pursued that statute, named the electoral board, and that electoral board then is notified that it files its answer. The electoral board didn't do that. It was negligent. It didn't file it before the hearing on petition for judicial review, and it didn't file it within 10 days of the filing of the petition, which 10-10.1 indicates they're supposed to do. At the hearing, the assistant state's attorney for St. Clair County walks in and serves Petitioner's attorney with an appearance on behalf of the electoral board. At that time, Petitioner didn't know what he was doing and assumed that he was going to attempt to argue, which he cannot do. Electoral boards are neutral bodies. And this is specifically what Petitioner's attorney said. He said, you can't argue, and then cited three cases, Kozenczak, Bindel, and DeLay, which say that electoral boards can't prosecute appeals and can't advocate on behalf of their positions because of their duty of impartiality. And that was the only issue raised by Petitioner. In objector's brief, they brazenly state that we objected to the filing of the record. It couldn't be more untrue. If you look at page 9 of the record of Circuit Court, when Mr. Cleary, the assistant state's attorney, finally says, I'm here to present the record, Judge Gleeson looked at Petitioner's attorney, and I stated, I have no objection. It can't be any more clear in the record. The next words out of anybody's mouth was Mr. Sprague stating, I have no objection. And then he went on to mischaracterize the issue raised by Petitioner, stating that Petitioner's attorney stated, Mr. Cleary can't do anything in this hearing. Of course that's not what we're saying, and we just said we didn't object to the record. Well, Judge Gleeson didn't accept the record, so the record was never admitted. Immediately after that, despite co-counsel being the one that objected, attorney Horner said, you don't have the record now, and you've got to throw the case out. This is what you dealt with in your reply brief? Dealt with in our reply brief, and I'll leave it to your honors. I know you haven't had a chance to read that. But essentially what, and this is the same strategy they're employing here after we tried to provide you with the record. As they correctly note in their response brief, you reviewed the Electoral Board's record, not the Circuit Court's record. And that's what we tried to provide you. And it's our belief that you could order the Electoral Board to provide this with you if so needed. The other issue that I'd just like to bring up is the Electoral Board failed to issue a proper written decision under the election. Under the election, voters are supposed to set forth in a written decision the facts upon which they're basing their decision, and whatever findings they make with regard to the legal issues. And these are usually two, three-page documents. And that didn't happen. Thank you, Your Honor. And I'd just like to say that the Electoral Board's decision should be reversed. Thank you very much for your brief today. We know this has been an exercise in matters. We do appreciate you all coming today. Thank you. We'll get back in here shortly. We'll be in recess.